# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cv-1298 (KBJ) |
| | ) | |
| WASHINGTON METROPOLITAN | ) | |
| AREA TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Almost four years ago, Plaintiff Jane Doe boarded a red-line subway train at a stop in Glenmont, Maryland. During the ride, another passenger forced Doe behind a partition in one of the train cars and raped her at knife point. (*See* Complaint, ECF 1-4, at ¶¶ 5–7.) In the wake of this terrible crime, Doe filed a civil complaint against the operator of subway system—Defendant Washington Metropolitan Area Transit Authority ("WMATA")—alleging that WMATA had negligently failed to take steps to protect her from the assailant (a man who happened to be known to WMATA due to a prior incident involving sex-related misconduct in the subway system). (*Id.* ¶ 9).

Before this Court at present is WMATA's motion to dismiss Doe's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* Def.'s Mem. in Support of Mot. to Dismiss ("Def.'s Mot."), ECF 5-1). WMATA insists that it is immune from tort claims that arise out of its governmental functions, and that the negligence count at issue here qualifies as such. WMATA also points to the same theory of sovereign immunity as a bar to Doe's punitive damages count. For the

reasons explained fully below, this Court concludes that WMATA is correct, and that sovereign immunity bars both of the claims that Doe has brought in the instant complaint. Consequently, and unfortunately for Doe, WMATA's motion to dismiss must be **GRANTED**, and Doe's complaint must be **DISMISSED**. An Order consistent with this Memorandum Opinion will follow.

I.  **BACKGROUND**[1]

On April 12, 2016, Doe was a passenger on a WMATA red-line train in Glenmont, Maryland, when John Prentice Hicks, who was another passenger in that same train car, threatened Doe with a knife, forced her behind "a darkened and secluded partition" in the back of the train car, and raped her. (Compl. ¶¶ 6–7.) Approximately one week before this event, Hicks had masturbated in front of other WMATA patrons on another red-line train, and the incident had been reported to WMATA. (*Id.* ¶¶ 9–10.) WMATA allegedly identified Hicks following that first incident (*id.* ¶ 11), but it neither alerted its passengers about Hicks and his conduct nor attempted to prevent Hicks from using WMATA trains (*id.* ¶ 12). Hicks was not apprehended until after he attacked Doe. (*Id.*)

On April 4, 2019, Doe filed a civil complaint against WMATA in the Superior Court of the District of Columbia. Doe's complaint asserts one count of negligence (*id.* ¶ 21–26) and one count of punitive damages (*id.* ¶ 27–32). It also contains a series of allegations concerning WMATA's inaction following Hicks's public masturbation. Specifically, Doe's complaint alleges that: "[p]rior to the sexual abuse that is the focus

---

[1] The facts recited in this opinion are gleaned from Doe's complaint. This Court has treated the complaint's factual allegations as true for the purpose of resolving the instant motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

2

of this lawsuit, [WMATA] had identified John Prentice Hicks as the person who exposed himself and masturbated on one of its trains" (*id.* ¶ 11), but WMATA "failed to take appropriate steps to either apprehend John Prentice Hicks prior to the incident, prevent him from using the WMATA system, or warn passengers of John Prentice Hicks'[s] potential presence and the danger to them" (*id.* ¶ 12). WMATA also allegedly failed to "take proper steps to ensure the safety of passengers on its trains; . . . inform the employees including, but not limited to, attendants and personnel on the trains and at the train stations of the dangers of John Prentice Hicks; . . . make reasonable efforts to protect Plaintiff against sexual abuse while she was a passenger on Defendant's train; . . . ensure the peaceful completion of Plaintiff's journey; [or] . . . exercise ordinary and reasonable care under the circumstances" (*id.* ¶ 18). Additionally, Doe's complaint alleges that WMATA's decisions with respect to the design of its cars were negligent because, although WMATA "knew or should have known that the darkened partitions on its trains behind which John Prentice Hicks assaulted Plaintiff allowed for potential assailants such as John Prentice Hicks to shield their behavior from view . . . [and] created an environment in which crimes can more easily be committed" (*id.* ¶¶ 15–16), WMATA "fail[ed] to adequately remedy a known dangerous hazard" by "replac[ing] or remov[ing] the darkened and secluded partitioned areas of its trains" (*id.* ¶ 18).

On May 6, 2019, WMATA removed Doe's lawsuit to federal court under the WMATA Compact, which gives federal courts original jurisdiction over all legal actions against WMATA. (*See* Notice of Removal, ECF 1, at 2.) Shortly thereafter, WMATA filed a motion to dismiss Doe's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (*see* WMATA's Mot. to Dismiss ("Def.'s Mot."), ECF

3

No. 5), which Doe opposes (*see* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 8.)

In its motion, WMATA argues that Doe's complaint should be dismissed in its entirety under the doctrine of sovereign immunity. (*See* Def.'s Mot. at 1–2.) In particular, WMATA contends that any allegation relating to the agency's conduct following Hicks's public masturbation concerns WMATA's police activity, which is a quintessential governmental function for which WMATA may not be held liable (*see id.*), and that the design of WAMTA's subway cars is a discretionary function for which sovereign immunity has not been waived (*see id.* at 2). Doe responds that her allegations concern the various ways in which "WMATA as an organization failed to act reasonably" beyond the scope of its governmental functions. (Pl.'s Opp'n at 9.) Additionally, while WMATA invokes sovereign immunity as a shield against Doe's punitive damages count (*see* Def.'s Mot. at 10), Doe raises an "extraordinary circumstances" exception to the general rule that no implicit waiver of immunity for punitive damages will be recognized (*see* Pl.'s Opp'n at 14).

Following a hearing, this Court took WMATA's motion to dismiss—now ripe for decision—under advisement.

## II. LEGAL STANDARDS

### A. Motions To Dismiss Under Rule 12(b)(1)

In contrast to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which requires courts to ask whether the facts alleged suffice to state a claim to relief that is plausible on its face, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Rule 12(b)(1) imposes on the

court an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005) (internal quotation marks and citations omitted). A claim of sovereign immunity is appropriately decided pursuant to a motion brought under Rule 12(b)(1) because "[s]overeign immunity strips the court of jurisdiction[.]" *Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014).

When ruling on a Rule 12(b)(1) motion, the court "treat[s] the complaint's factual allegations as true" and affords the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (internal quotation marks and citation omitted). However, those factual allegations receive "closer scrutiny" than they do in the Rule 12(b)(6) context. *Id*. (internal quotation marks and citation omitted). Additionally, unlike when evaluating a Rule 12(b)(6) motion, a court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim. *See Jerome Stevens Pharm., Inc. v. F.D.A.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). With reference to evidence beyond the pleadings, the court can also "resolve factual disputes concerning jurisdiction." *Smith v. W.M.A.T.A.*, 290 F.3d 201, 205 (4th Cir. 2002) (internal citation omitted).

### B. WMATA's Immunity Under The WMATA Compact

Maryland, Virginia, and the District of Columbia created WMATA pursuant to a "compact[,]" D.C. Code Ann. § 9–1107.01, with the goal of providing a regional transportation system that services the metropolitan area in and around Washington,

D.C. *See Delon Hampton & Assocs., Chartered v. W.M.A.T.A.*, 943 F.2d 355, 357 (4th Cir. 1991). With respect to the transportation agency they created, these two states (and the District of Columbia) expressly conferred upon WMATA their own sovereign immunity. *See Watters v. W.M.A.T.A.*, 295 F.3d 36, 39 (D.C. Cir. 2002). "Thus, unless WMATA's sovereign immunity has been waived, [a] district court lacks jurisdiction to enter a judgment against" it and, as a result, must dismiss the case under Rule 12(b)(1). *Id.* at 39–40.

Notably, Section 80 of the WMATA Compact expressly waives WMATA's sovereign immunity under certain circumstances and retains it with respect to others. In this regard, that statute states that WMATA

> shall be liable for its contracts and for its torts and those of its Directors, officers, employees[,] and agent[s] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function.

D.C. Code Ann. § 9–1107.01(80). Thus, the question of whether WMATA enjoys sovereign immunity from tort liability in any given case turns on whether the alleged tort was committed in the course of "any proprietary function," as opposed to "a governmental function." *Id*.

The D.C. Court of Appeals has noted that, "in general, the provision of mass transportation is a proprietary function within the meaning of the WMATA Compact, and WMATA, like any common carrier, owes a duty of reasonable care to its passengers." *W.M.A.T.A. v. O'Neill*, 633 A.2d 834, 837 (D.C. 1993) (internal citations omitted). Because "[a] common carrier transports precious human cargo[,]"

6

*W.M.A.T.A. v. Jeanty*, 718 A.2d 172, 174–75 (D.C. 1998), "public policy and safety require that [common carriers] be held to the greatest possible care and diligence[,]" *Pa. & Reading R.R. Co. v. Derby*, 55 U.S. (14 How.) 468, 486 (1852). In other words, common carriers "are bound to exercise extraordinary vigilance [aided] by the highest skill for the purpose of protecting their passengers against injury resulting from defects in ways or instrumentalities used by the carriers." *Capital Traction Co. v. Copland*, 47 App. D.C. 152, 159 (D.C. 1917). And, indeed, "no rule is better established than that which holds a common carrier to the highest degree of care[.]" *Missile Cab Ass'n, Inc. v. Rogers*, 184 A.2d 845, 847 (D.C. 1962). *But see Sebastian v. District of Columbia*, 636 A.2d 958, 962 (D.C. 1994) (explaining that, "although the language in [D.C.] cases speaks of the high degree of care required of a common carrier," such a carrier "is subject to essentially the same standard as any other alleged tortfeasor, *i.e.*, an obligation to exercise due care").

At the same time, "in establishing WMATA as a common carrier, the creating jurisdictions did not intend to expose it to liability coextensive with that of a private carrier; otherwise the governmental-proprietary distinction of the Compact would have no meaning." *O'Neill*, 633 A.2d at 837. Thus, WMATA is not just *any* common carrier; the WMATA Compact expressly authorizes the agency to undertake certain quintessential governmental functions. For example, Section 76 requires WMATA "to establish and maintain a regular police force, to be known as the Metro Transit Police, to provide protection for its patrons, personnel, and Transit facilities." D.C. Code Ann. § 9-1107.01(76)(a). In other words, while WMATA does function as a common carrier,

7

it also performs certain "governmental" activities with respect to which no duty of reasonable care to its passengers exists.[2]

Against this backdrop, "[t]he path that a court must take in order to determine whether an alleged tort of WMATA's was committed in the course of a governmental function (for which the agency enjoys sovereign immunity) or a proprietary function (with respect to which sovereign immunity is waived) is well worn." *Whiteru v. W.M.A.T.A.*, 258 F. Supp. 3d 175, 184 (D.D.C. 2017). As a threshold matter, courts start by considering "whether the challenged conduct 'amounts to a "quintessential" governmental function, like law enforcement[.]'" *Tapp v. W.M.A.T.A.*, 306 F. Supp. 3d 383, 396 (D.D.C. 2016) (quoting *Beebe v. W.M.A.T.A.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997)). If the conduct is quintessentially governmental, "the court's inquiry ends there, because WMATA is unquestionably entitled to immunity from suit." *Whiteru*, 258 F. Supp. 3d at 184. However, in many cases, the complained-of conduct is not quintessentially governmental, so the court "must venture further" in order to determine whether a lawsuit against WMATA can proceed. *Id.*

---

[2] Notably, in this regard, the Metro Transit Police Department has "the duty of enforcing the laws of the Signatories, the laws, ordinances, and regulations of the political subdivisions thereof in the Transit Zone, and the rules and regulations of [WMATA]," but shall not "relieve any Signatory or political subdivision or agency thereof from its duty to provide police, fire, and other public safety service and protection" or otherwise "limit, restrict, or interfere with the jurisdiction of, or the performance of, duties by the existing police, fire, and other public safety agencies." D.C. Code Ann. § 9-1107.01(76)(a). Moreover, "[a] member of the Metro Transit Police shall have the same powers . . . and shall be subject to the same limitations . . . as a member of the duly constituted police force of the political subdivision in which the Metro Transit Police member is engaged in the performance of his or her duties." *Id.* § 9-1107.01(76)(b). In addition, WMATA has "the power to adopt rules and regulations for the safe, convenient, and orderly use of the Transit facilities owned, controlled, or operated by [WMATA], including the payment and the manner of the payment of fares or charges therefor, the protection of the Transit facilities, the control of traffic and parking upon the Transit facilities, and the safety and protection of the riding public." *Id.* § 9-1107.01(76)(e).

8

To further parse WMATA's immunity and the line between governmental and discretionary functions—which can be difficult to ascertain—courts have imported the distinction between "discretionary" and "ministerial" acts from the Federal Tort Claims Act ("FTCA"). *KiSKA Constr. Corp. v. W.M.A.T.A.*, 321 F.3d 1151, 1158 (D.C. Cir. 2003). A "discretionary" act involves "judgment, planning, or policy decisions[,]" *Beatty v. W.M.A.T.A.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988), and is generally considered to be part of an agency's "governmental function[,]" *Beebe*, 129 F.3d at 1287. Therefore, courts have concluded that WMATA retains sovereign immunity with respect to alleged torts that result from its discretionary acts. Conversely, under the FTCA framework, when the agency commits a ministerial act—that is, when it is involved in the "enforcement or administration of a mandatory duty at the *operational level*, even if professional expert evaluation is required[,]" *Beatty*, 860 F.2d at 1127— then the agency is engaging in a "proprietary function" for Section 80 purposes, and thus it may be held liable under the WMATA Compact, *see Whiteru*, 258 F. Supp. 3d at 184.[3]

Given this, the governmental-versus-proprietary-function inquiry plays out in two separate steps. Under step one, courts ask whether "any statute, regulation, or policy specifically prescribes a course of conduct for an employee to follow." *KiSKA*, 321 F.3d at 1159 (internal quotation marks and citation omitted). "If such authority

---

[3] To be sure, the FTCA's "discretionary" functions definition and the meaning of the WMATA Compact's "governmental" functions are not coterminous. Nor can it necessarily be said that all "proprietary" functions for the purpose of Section 80 must be "ministerial" as FTCA jurisprudence defines that term. *Whiteru*, 258 F. Supp. 3d at 184. But the D.C. Circuit has determined that "discretionary" acts are "at least a subset of 'governmental functions.'" *Sanders v. W.M.A.T.A.*, 819 F.2d 1151, 1155 n.9 (D.C. Cir. 1987).

9

exists, *and* if the relevant statute, regulation[,] or policy *leaves no room for discretion* regarding the agency's conduct, then the alleged tort resulted from the exercise of a proprietary function, and WMATA cannot claim sovereign immunity protection." *Whiteru*, 258 F. Supp. 3d at 185; *see, e.g.*, *id.* at 186 (holding that WMATA's Standard Station Operating Procedures regarding closing inspections qualified as a "policy"). But if there is no such statute, regulation, or policy, or if the relevant guidance does not create a mandatory duty such that it leaves room for discretion, courts proceed to step two of the inquiry, which requires an evaluation of the extent of the agency's "exercise of discretion and the limits (if any) on [its] decision-making[.]" *Id.* (alteration in original) (internal citation omitted). And *that* evaluation involves asking "whether the [agency's] exercise of discretion is grounded in social, economic, or political goals[.]" *KiSKA*, 321 F.3d at 1159 (internal quotation marks and citations omitted). If so, then "the activity is governmental" and "fall[s] within section 80's retention of sovereign immunity[.]" *Id.* (internal quotation marks and citation omitted).

## III. ANALYSIS

Doe's complaint includes two general categories of claims. The first group of allegations concerns WMATA's inaction following the initial known incident concerning Hicks (i.e., his public masturbation) (*see* Compl. ¶¶ 11, 12, 18), while the second category of claims pertains to WMATA's decisions with respect to the design of its subway train cars (*see id.* ¶¶ 15, 18). As explained fully below, this Court concludes that WMATA has sovereign immunity with respect to both of these categories of legal claims under well-established precedents that demarcate the boundaries of governmental and proprietary agency functions for the purpose of Section 80. Indeed,

10

each of the claims that Doe has brought against WMATA in this action assails either the agency's quintessential governmental functions—i.e., its law-enforcement-like decisions regarding how to respond to the potential criminal behavior of one of its customers—or its discretionary determinations about the design of its train cars. And, similarly, in the absence of any express waiver of sovereign immunity for punitive damages, Doe's punitive damages count must likewise be dismissed. Consequently, this Court lacks subject-matter jurisdiction to consider the merits of Doe's claims.

>    A.  **Doe's Claims Regarding WMATA's Allegedly Inadequate Reaction To A Prior Potential Crime By Doe's Assailant Are Challenges To A Governmental Function Of The Agency**

According to the complaint, although WMATA allegedly "had identified John Prentice Hicks as the person who exposed himself and masturbated on one its trains" (Compl. ¶ 11), the agency negligently "failed to take appropriate steps to either apprehend John Prentice Hicks prior to Doe's incident, prevent him from using the WMATA system" (*id.* ¶ 12), "warn passengers of John Prentice Hicks'[s] potential presence and the danger to them" (*id.*), "take proper steps to ensure the safety of passengers on its trains" (*id.* ¶ 18), "inform the employees . . . of the dangers of John Prentice Hicks" (*id.*), or "exercise ordinary and reasonable care under the circumstances" (*id.*). In addition, the complaint alleges that WMATA was negligent when it failed to "make reasonable efforts to protect Plaintiff against sexual abuse while she was a passenger on Defendant's train" (*id.*), and "ensure the peaceful completion of Plaintiff's journey" (*id.*). WMATA argues that these allegations "are based upon WMATA's police function, a quintessential governmental function for which WMATA enjoys immunity[.]" (Def.'s Mot. at 1.) Doe responds that these claims are "not

11

limited to just WMATA's Metro Transit Police Department" but instead concern "ways in which WMATA as an organization failed to act reasonably outside of [Metro Transit Police Department (MTPD)'s] actions[.]" (Pl.'s Opp'n at 9.)

In this Court's view, WMATA has the better of this argument. To begin with, it is indisputable that Doe's claims concern WMATA's allegedly negligent failure to take certain actions *in response to* the prior incident involving Hicks's public masturbation. Given the potential criminal nature of this conduct, the agency's response seems to fall squarely within the purview of WMATA's law enforcement authority. *See* D.C. Code Ann. § 9-1107.01(76)(a)-(b) ("[WMATA] is authorized to establish and maintain a regular police force, to be known as the Metro Transit Police, to provide protection for its patrons, personnel, and Transit facilities. . . . A member of the Metro Transit Police shall have the same powers . . . as a member of the duly constituted police force of the political subdivision in which the Metro Transit Police member is engaged in the performance of his or her duties."). And there is no allegation in the complaint that a statute, regulation, or policy imposes a mandatory duty on any WMATA employee to take certain actions, or make certain decisions, following a potentially criminal incident within the transit system. Instead, it is clear beyond cavil that, after a crime has been committed and "the WMATA transit police are involved, WMATA's function is governmental in nature." *Davis v. Sarles*, 134 F. Supp. 3d 223, 227 (D.D.C. 2015); *see also Burkhart v. W.M.A.T.A.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (explaining that "police activity" is a quintessential governmental function); *Martin v. W.M.A.T.A.*, 667 F.2d 435, 436 (4th Cir. 1981) ("The operation of a police force is a quintessential governmental function."). Thus, the bulk of the claims that Doe brings in this lawsuit

fail to clear the sovereign-immunity bar at the outset, because any alleged negligent failure of the agency to respond to potentially criminal behavior by one of its customers in a certain manner—even one that, according to Doe, the general duty of reasonable care requires—involves the exercise of a quintessential governmental function of the agency.[4]

Notably, even if this Court were to conclude that the actions that Doe alleges WMATA should have taken are *not* quintessentially within the purview of law enforcement by nature, *see, e.g.,* (Compl. ¶¶ 12, 18 (asserting that WMATA was negligent in failing to warn passengers of the potential danger or preventing Hicks from using the metro system)), Doe's claims are *still* subject to dismissal on sovereign immunity grounds, because WAMTA's allegedly negligent inaction plainly involves its discretionary (non-proprietary) functions. That is, Doe does not allege that any statute, regulation, or policy regulates the agency's reaction to a potential crime on a subway train. *See Whiteru*, 258 F. Supp. 3d at 185. Thus, it is clear to this Court that, in deciding whether or not to post flyers about Hicks (and potentially alarm thousands of passengers) (*see* Compl. ¶ 12), or whether or not to turn off Hicks's farecard (and

---

[4] This is not to say that *everything* that WMATA's police force does, or everything the metro police have the authority to do, necessarily qualifies as quintessentially governmental. For instance, in *Tapp v. W.M.A.T.A.*, this Court concluded that MTPD's posting of a "Be On the Look-Out" flyer that warned the public that a former employee was no longer allowed on WMATA's property "was not an act that was taken in furtherance of a quintessential governmental function[.]" 306 F. Supp. 3d at 396. But in that case *the decision* to post the flyer was made in the context of an employment dispute, not a criminal investigation, and was thus clearly "an exercise of discretion by WMATA as an employer[,]" *id*. at 396–97 (citing D.C. Code § 9-1107.01(12)(g) (granting WMATA the power to "[c]reate and abolish offices, employments and positions . . . as it deems necessary for the purposes of the Authority, and fix and provide for the qualification, appointment, [and] removal, . . . of its officers and employees without regard to the laws of any of the signatories")). By contrast, here, WMATA's allegedly negligent shortcomings, as the complaint frames them, primarily concern MTPD's response to potentially criminal activity.

potentially interfere with any law enforcement's plans to monitor Hicks's movements across the WMATA system) (*see id.*), WMATA was exercising discretion in a manner that was "grounded in social, economic, or political goals." *KiSKA*, 321 F.3d at 1159 (internal quotation marks and citations omitted). As such, Doe's tort claims concerning these decisions "fall[] within section 80's retention of sovereign immunity[.]" *Id.*

### B. Doe's Tort Claims About The Design Of WMATA's Subway Cars Pertain To The Agency's Discretionary Governmental Functions

The remainder of Doe's complaint alleges that WMATA "knew or should have known that the darkened partitions on its trains behind which John Prentice Hicks assaulted Plaintiff allowed for potential assailants . . . to shield their [criminal] behavior from view" (*id.* ¶ 15), and yet WMATA did not "replace or remove the darkened and secluded partitioned areas of its trains" and thereby failed to maintain its trains in safe conditions (*id.* ¶ 18). In support of its motion to dismiss, WMATA argues that the agency "enjoys governmental function immunity for the design of its train cars, which includes the installation of glass panels at the end of the cars." (Def.'s Reply at 8 (citing *Simpson v. W.M.A.T.A.*, 688 F. Supp. 765, 767 (D.D.C. 1988)).) There is clear and unequivocal case law from the D.C. Court of Appeals on this very subject; therefore, this Court easily concludes that WMATA is immune from any liability under tort law for its decision not to remove or modify the tinted glass panels that partition certain seats at the end of its train cars.

The D.C. Court of Appeals has long held "that the design and planning of a transportation system are governmental activities because they involve quasi-legislative policy decisions which are discretionary in nature and should not be second-guessed by

14

a jury." *McKethean v. W.M.A.T.A.*, 588 A.2d 708, 714 (D.C. 1991). Accordingly, courts in the District of Columbia have found that a variety of design decisions by WMATA are part of the agency's discretionary, governmental functions. *See, e.g.*, *Abdulwali v. W.M.A.T.A.*, 315 F.3d 302, 304 (D.C. Cir. 2003) (holding that the design and placement of warning signs in subway cars was a discretionary function); *Dant v. District of Columbia*, 829 F.2d 69, 75 (D.C. Cir. 1987) (design of the WMATA fare collection system); *Warren v. W.M.A.T.A.*, 880 F. Supp. 14, 19 (D.D.C. 1995) (choice of glass in bus windows); *Jones v. W.M.A.T.A.*, 742 F. Supp. 24, 25 (D.D.C. 1990) (design of subway station escalators); *Simpson*, 688 F. Supp. at 767 (distance of the gap between the platform and the train); *Nathan v. W.M.A.T.A.*, 653 F. Supp. 247, 248 (D.D.C. 1986) (design of stairwells in a subway station). The claim that Doe makes here—i.e., that WMATA should not have designed train cars that have a tinted partition area accessible to the public in the back of them (*see* Compl. ¶¶ 15, 18)—is no different. Thus, however meritorious Doe's contention about the design of the train cars might be, this Court must conclude that WMATA has sovereign immunity with respect to Doe's design-defect-type tort claims and, as a result, the agency cannot be held liable for its decision to install tinted glass panels on some of its cars.

### C. Sovereign Immunity Bars Doe's Punitive Damages Count

Finally, it is clear to the Court that the punitive damages count in Doe's complaint is also subject to dismissal on sovereign immunity grounds. As WMATA points out, "[p]unitive damages cannot be recovered, as a matter of law, against a state-level governmental entity possessing sovereign immunity like WMATA[.]" (Def.'s Mot. at 10 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981)).)

This is because "Section 80 of the Compact is silent on the matter of punitive damages," *Teart v. W.M.A.T.A.*, 686 F. Supp. 12, 13 (D.D.C. 1988), and in the absence of an express waiver of sovereign immunity, any action for such damages is barred, *see, e.g.*, *Lucero–Nelson v. W.M.A.T.A.*, 1 F. Supp. 2d 1, 11 (D.D.C. 1998) (finding the plaintiff's "fail[ure] to cite any statute that expressly awards punitive damages against WMATA . . . fatal to [her] position"); *Wainwright v. W.M.A.T.A.*, 958 F. Supp. 6, 10 (D.D.C. 1997) ("Thus, it seems clear, as a matter of law, logic, and public policy, that punitive damages are unavailable against WMATA, even for torts arising out of its proprietary functions."). Doe points to no express waiver for punitive damages in the WMATA Compact and, to this Court's knowledge, none exists. Consequently, Doe's punitive damages claim is presumptively subject to dismissal on sovereign immunity grounds.

Doe's attempt to invoke the so-called "extraordinary circumstances" exception to this sovereign-immunity analysis is unpersuasive. (*See* Pl.'s Opp'n at 14.) The one D.C. Court of Appeals case that has recognized an "extraordinary circumstances" exception did so in dicta, *see Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975) (per curiam), and ever since then, the Court of Appeals has cited *Smith* only for the categorical proposition that "punitive damages may not be awarded against the District of Columbia," *Finkelstein v. District of Columbia*, 593 A.2d 591, 599 (D.C. 1991).

To be sure, some D.C. judges have entertained the idea of this purported exception. *See, e.g.*, *Lucero–Nelson*, 1 F. Supp. 2d at 11; *Teart*, 686 F. Supp. at 13. But these cases provide no "guidance as to the nature, frequency, duration, intensity[,]

or other characteristics of the requisite 'extraordinary circumstances'" necessary to trigger the exception. *Wainwright*, 903 F. Supp. at 137. And it is telling that Doe has not cited to *any* case—state or federal—in which a court has found that the "exceptional circumstances" exception actually applies. Consequently, in this Court's view, there is no indication in the case law that *Smith's* "exceptional circumstances" language represents a viable path to the imposition of punitive damages on an entity that otherwise enjoys sovereign immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Doe cannot seek tort damages from WMATA for its alleged failure to protect her from Hicks's horrible criminal attack. Nor can WMATA be held liable for its train-design decisions, and there is no express waiver of sovereign immunity that would permit Doe's punitive damages claim to proceed. Therefore, as set forth in the accompanying Order, WMATA's motion to dismiss will be **GRANTED**, and Doe's complaint will be **DISMISSED** in its entirety.

DATE: March 24, 2020

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

17